UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 19-24970-CIV-GOODMAN
[CONSENT CASE]

LUZ MARQUEZ,

      Plaintiff,

v.

COSTCO WHOLESALE CORPORATION,

      Defendant.

_____/

## ORDER ON DEFENDANT'S SUMMARY JUDGMENT MOTION

Plaintiff Luz Marquez, who has a spinal disorder called Neuro Stenosis Cervical, filed a lawsuit against her former employer, Defendant Costco Wholesale Corporation. [ECF No. 1]. She alleges that Costco (1) failed to provide her with reasonable accommodations, in violation of the Americans With Disability Act ("ADA") (Count I), and (2) violated the Age Discrimination in Employment Act ("ADEA") by discriminating against her because of her age and her disability. *Id.*

Specifically, Marquez alleges that Costco demoted her and intentionally reclassified her to a position she would not be able to perform because of her age (Count II). *Id.* at pp. 6-7. She further contends that Costco did not reassign her to other vacant positions in the company for which she was qualified. *Id.* Marquez resigned from her

position, but her Complaint also alleges that she was constructively discharged because of her disability and age. *Id.*

Costco filed a summary judgment motion, arguing that it demoted Marquez for legitimate, non-discriminatory reasons: using her manager's login credentials to approve changes to her own time records, a serious (and terminable) violation of Costco's policies. [ECF No. 29]. Costco's motion also contends that it allowed Marquez to remain on a leave of absence for several months, which it says is a reasonable accommodation for her temporary medical restrictions. *Id.* Costco's motion further argues that Marquez's claims concerning her suspension and demotion are time-barred and that her constructive discharge claim fails because her employment conditions were not pervasive and intolerable. *Id.*

For the reasons outlined below, the Undersigned **grants** Costco's summary judgment motion.

In particular, the Undersigned finds that the suspension and demotion claims (for age and disability discrimination) are time-barred. Although the claims are untimely, I nevertheless evaluated them on the merits -- and conclude that they fail because Costco had a legitimate, non-discriminatory reason for demoting her. I further conclude that a defense summary judgment on the reasonable accommodation theory is warranted because (1) Costco was not required to promote Marquez in order to provide an

accommodation, and (2) Marquez's medical restrictions on lifting items in excess of a specified weight justified Costco's decision to place her on leave, rather than assigning her to a position where she could not perform the essential function of lifting items.

## I.      Undisputed Factual Background[1]

### Facts Highlighted by Defendant Costco

1. Costco is a Washington corporation headquartered in Issaquah, Washington.

2. In the United States, Costco has more than 185,000 employees and operates more than 550 cash and carry membership warehouses, which sell products including food, office supplies, electronics, clothing, tires, housewares and health and beauty aids to the Company's business and individual members (customers).

---

[1]      The facts are generated from the paragraphs in each side's Statement of Facts or Reply Statement of Facts which the opposing party expressly agreed are undisputed. [ECF Nos. 30; 32; 34]. For those purported facts which the opposing party classified as *partly* disputed, the Undersigned includes only the undisputed portions. The Undersigned will retain the paragraph numbering used by the parties. The abbreviation, "N/A," means that the paragraph is disputed. The Undersigned sometimes changed the wording of an undisputed fact for stylistic and/or grammatical purposes. In addition, to enhance readability, I removed the specific record citations. They can be found in the initial source document, if needed.

If a party argued that a fact was disputed but did not provide record evidence to support the contention, then I deemed the fact to be *undisputed* if otherwise supported by record evidence.

3. The Miami, Florida warehouse where Plaintiff Luz Marquez ("Plaintiff" or "Marquez") worked until her resignation in January 2016 has since moved into a new building. However, at the time Plaintiff was employed, the Miami warehouse employed approximately 265 employees.

4. The Miami warehouse is run by a warehouse general manager, who is supported by a team of assistant managers, staff-level managers, department managers, and area supervisors.

5. Costco says it is committed to providing a work environment free from all forms of unlawful employment discrimination. [**Note:** In her response, Marquez claims that this fact is disputed. But her point is a different point which does not actually contest this material fact. So the Undersigned views this as undisputed. [ECF No. 32].]

6. The Costco employee handbook, the Employee Agreement, includes Costco's Equal Opportunity Policy, and other important information and policies, including the Reporting Harassment, Discrimination, or Retaliation Policy, and the Open-Door Policy/Resolution of Disagreements.

7. Plaintiff most recently began working for Costco on October 26, 1995.

8. In March 2015, Plaintiff was working as a Payroll Clerk, which is classified as a "service clerk" role.

4

9. In her role as Payroll Clerk, Plaintiff reported directly to the Administration Manager. In January 2015, Raul De La Milera ("De La Milera") became the Administration Manager at the Miami warehouse and he remained in the position until July 2015.

10. De La Milera gave Plaintiff his username and password so that she could assist him with his timecard adjustment duties.

11. When employees are unable to, or forget to, swipe their time cards before leaving or returning to work, the time records need to be manually adjusted, and the adjustments need to be approved by a manager, ordinarily the Administration Manager.

12. On at least two occasions after she received De La Milera's login credentials, Plaintiff used those credentials to adjust and approve her own timecard.

13. It is against Costco's policy for an employee to adjust her own timecard.

14. It is against Costco's policy for an employee to use someone else's login credentials.

15. On March 19, 2015, after becoming aware that Plaintiff had used De La Milera's login credentials to adjust her own timecard, Costco issued Plaintiff a permanent Employee Counseling Notice ("ECN") and suspended her without pay for three days, pending termination of employment. Plaintiff was suspended on March 20, 2015, April

1, 2015, and April 2, 2015. She used approved time off that had already been scheduled from March 21, 2015 through March 31, 2015.

16. Plaintiff understood that the policy violation for which she was being suspended was a terminable offense.

17. It is also a violation of Costco's policies for any employee to share his or her login credentials with another employee.

18. De La Milera received a permanent ECN in his personnel file for violating Costco's policy regarding sharing his login credentials.

19. When Plaintiff returned to work on April 3, 2015, she was demoted to Front End Assistant, which is classified as a "Service Assistant" position, one step *down* from her prior classification as a "Service Clerk."

20. The essential functions of the Front End Assistant position, which are documented on Costco's Job Analysis form, require frequent bending or stooping; frequent squatting; frequent lifting or carrying below the waist 11 to 50 pounds; occasional lifting or carrying 51 to 100 pounds; frequent pushing or pulling 11 to 20 pounds; occasional pushing or pulling 21 to 50 pounds; and frequent lifting or carrying at the waist or chest 11 to 20 pounds.

21. After demoting Plaintiff from the Payroll Clerk role in April 2015, Costco selected Maria Lacayo ("Lacayo") as the new Miami Payroll Clerk. Lacayo was 44 years

old when she was selected for the Payroll Clerk role, just two years younger than Plaintiff, who was born in February 1969.

22. Three days after Plaintiff's demotion, she went on a leave of absence. Plaintiff remained on a leave of absence through November 18, 2015. She returned to work as a Front End Assistant on November 19, 2015 and worked there until December 2, 2015, when she went on a leave of absence again.

23. In early April 2015, Plaintiff submitted to Costco a note from her neurologist, Dr. David Adams ("Dr. Adams"), dated April 6, 2015, stating that she needed to remain out of work for two weeks (i.e., until April 20, 2015).

24. Plaintiff's physical therapist, Max Riveros ("Riveros"), was given a copy of the Job Analysis for Front End Assistant form and wrote a note on the form, dated April 13, 2015. In this note, Riveros stated that until May 13, 2015, Plaintiff could do no lifting greater than 10 pounds, no twisting, no bending, and no pushing or pulling. **Those restrictions would not have allowed Plaintiff to perform all of the essential functions of the Front End Assistant position.**

25. On April 14, 2015, Plaintiff provided Lacayo, the new Payroll Clerk, a copy of the restrictions imposed by Riveros and explained that she had a follow-up appointment with her neurologist scheduled for May 4, 2015. At this time, Marquez was still on leave until April 20, 2015, per Dr. Adams's instructions. Lacayo advised Plaintiff that Costco

could not bring back any employee with Plaintiff's restrictions and that she would extend Plaintiff's return date to May 13, 2015, consistent with the notes of her doctor and her physical therapist.

26. In early May 2015, Plaintiff submitted to Costco a second note from Dr. Adams, dated May 4, 2015, stating that she must remain out of work entirely until June 11, 2015.

27. In early June 2015, Plaintiff submitted to Costco a third note from Dr. Adams, dated June 5, 2015, stating that Plaintiff could not lift more than 10 pounds, push more than 10 pounds, bend, or twist, and that these restrictions were expected to continue until at least July 11, 2015. **Bending and lifting more than 10 pounds are all required to perform the essential functions of the Front End Assistant job.**

28. Plaintiff also submitted to Costco a note from Dr. Romeo Rojas ("Dr. Rojas"), who was at the time her primary care physician, dated June 9, 2015, recommending that Plaintiff should not pull, push, or lift more than 20 pounds until she was cleared by Dr. Adams. The essential functions of the Front End Assistant job require frequent lifting of more than 20 pounds.

29. In approximately mid-July, Plaintiff submitted to Costco a note from Dr. Richard Glosser ("Dr. Glosser"), an orthopedic surgeon. This July 13, 2015 note imposed a lifting restriction of 15 pounds for at least six weeks (i.e., until approximately August

8

24, 2015). The essential functions of the Front End Assistant position require frequent lifting of more than 15 pounds.

30. In late August 2015, Plaintiff submitted to Costco a second note from Dr. Glosser, dated August 24, 2015, continuing the 15-pound lifting restriction for another six weeks (i.e., until approximately October 5, 2015).

31. In late September or early October, Plaintiff submitted a third note from Dr. Glosser, dated September 30, 2015, increasing Plaintiff's lifting restriction to 20 pounds for four weeks (i.e., until approximately October 28, 2015). **In order to perform the essential functions of the Front End Assistant position, a person frequently needs to lift more than 20 pounds.**

32. In late October or early November 2015, Plaintiff submitted a fourth note from Dr. Glosser, dated October 28, 2015, stating that Plaintiff could return to regular duty with no restrictions as of November 19, 2015.

33. Plaintiff returned to work on or around November 19, 2015 as a Front End Assistant.

34. Plaintiff worked her regular schedule until she called out sick on December 3, 2015.

35. After calling out sick on December 3, 2015, Plaintiff provided Costco a note from Dr. Rojas, dated December 2, 2015, imposing restrictions of no heavy lifting (more

than 20 pounds), no pushing, and no squatting. While subject to these restrictions, Plaintiff **could not have performed the essential functions of her Front End Assistant position.**

36. The December 2, 2015 note from Dr. Rojas was attached to an e-mail Plaintiff sent to Lacayo, confirming that she had called out sick that day, and adding that Dr. Rojas wanted her to try not to overdo it on lifting or pushing until she could see Dr. Glosser again on December 16, 2015. Lacayo responded to Plaintiff's email, advising Plaintiff that Costco would extend her leave of absence for another two weeks, until her next appointment with Dr. Glosser.

37. On December 17, 2015, Plaintiff provided Costco another letter from Dr. Glosser, dated December 16, 2015, stating that Plaintiff could work only modified duty that involves a 20-pound lifting restriction for at least four weeks.

38. Included with Dr. Glosser's December 17, 2015 note was an e-mail from Plaintiff to Lacayo, informing her that Dr. Glosser had referred her to a neurosurgeon.

39. On December 18, 2015, Lacayo requested clarification as to exactly what Dr. Glosser meant by "modified duty" and asked Plaintiff to have her doctor complete a "work abilities" form for clarification. Plaintiff never provided Costco any additional information from Dr. Glosser.

10

40. On January 27, 2016, Plaintiff submitted a <u>letter of resignation</u> to Costco, effective January 28, 2016.

41. On January 29, 2016, Plaintiff completed an exit interview form. Plaintiff was asked if she had any suggestions for how the company could improve, and she had no suggestions. Plaintiff stated that her reason for leaving was her health, mentally and physically. Plaintiff stated that she did not know if there was anything the company could have done to have prevented her from leaving. When asked if she could see herself coming back in the future, Plaintiff stated that maybe she would come back in the future, but that she needed to take care of her health first. Nothing on the exit interview form mentioned age or disability discrimination (or any other type of discrimination).

42. On April 26, 2016, Plaintiff filed a Charge of Discrimination (the "Charge") with the Equal Employment Opportunity Commission, alleging that she was subjected to discrimination based on age and disability. Plaintiff also alleged in the Charge that Costco could have accommodated her restrictions in various available positions, including a **Sales Auditor** position, which, she noted, was later given to "Brenda Cardenas, age 29."

43. A Sales Auditor role is a "service clerk" position. [<u>Note</u>: Plaintiff claims this is a disputed fact, but the evidence she submitted in support does not establish this.

Therefore, because Costco demonstrated the evidentiary foundation, the Undersigned treats this as an undisputed fact.]

44. A "service clerk" position is a higher-level position than a "service assistant," and a "service clerk" gets paid more than a "service assistant." [Note: Plaintiff claims this is a disputed fact, but the evidence she submitted in support does not establish this. Therefore, the Undersigned treats this as an undisputed fact.]

45. If Plaintiff had been given the Sales Auditor position, she says Costco could have assigned to her as an accommodation, then the new assignment would have been a *promotion* for her. [Note: Plaintiff says that this is a disputed fact, but the evidence she submitted in support does not establish this. Therefore, because Costco submitted evidence to substantiate this, the Undersigned treats this as an undisputed fact.]

46. N/A

47. N/A

48. Plaintiff asserts that there were other positions that Costco could have made available to her when she was injured. For example, Plaintiff asserts that she could have been a Membership Clerk.

49. There is no Membership Clerk position at Costco. Costco assumes that Plaintiff is referring to the Membership Assistant position, a service assistant-level job. However,

the essential functions of the Membership Assistant position require that an individual holding the job be able to lift and carry up to 50 pounds occasionally.

50. Plaintiff does not know whether there were any posted openings for Membership Clerks or Membership Assistants.

51. Open positions are posted at Costco on the intranet and in the break room. Plaintiff could have checked the postings from any Costco warehouse close to her home, but she admits that she did not do this.

52. Plaintiff also asserts that she could have been an executive marketer or promoter selling executive membership upgrades.

53. However, there is no such position as "Executive Marketer" – rather, marketing is simply one of many tasks performed by employees on the Front End. As even Plaintiff concedes, the executive marketer function, which markets executive upgrades, is performed by Cashier Assistants or, when they do not have enough cashiers, by Membership Clerks.

54. Plaintiff also asserts that she could have helped in the Majors Sales Department. Plaintiff asserts that during the time when she was seeking to return, Costco was hiring seasonal employees to train them on how to attend to the jewelry counter or to walk around the "Majors" department to assist members with things like TVs.

55. Plaintiff admits that there was no posted position that promised exclusively jewelry counter work. In fact, Costco has no specific position for a jewelry counter attendant. An employee who works the jewelry counter is a Major Sales Assistant. Major Sales Assistants sometimes assist with jewelry, sometimes assist with TVs, and sometimes assist with other products, like computers. Many of those products weigh more than 50 pounds. For this reason, the essential functions of a Major Sales Assistant require the ability to lift and carry up to 75 pounds occasionally. [Note: Plaintiff contends, in her response, that this paragraph is disputed, but her response does not challenge the accuracy of the paragraph. Instead, she says only that Costco could have offered her a reasonable accommodation "regarding some of the lifting responsibilities." This does not challenge the factual material cited here by Costco in this paragraph. Therefore, the Undersigned treats this as an undisputed fact.]

56. Plaintiff asserts that she could have worked folding clothes. There is no specific position for folding clothes. Clothes-folding duties are handled by the Stocker position. Stockers are responsible for moving pallets of merchandise and stocking products on shelves. For this reason, the essential functions of a Stocker require the ability to lift and carry up to 50 pounds frequently and up to 75 pounds occasionally.

57. Plaintiff asserts that she could have worked in the hearing aid department but admits that she does not know if there were any open postings for the hearing aid

department at the relevant time. [<u>Note:</u> In her response, Plaintiff says this paragraph is disputed, but her entire explanation after saying "disputed" is "Plaintiff asserted that." This does not explain how or why this paragraph is disputed, and it does not refer to any record evidence. Therefore, the Undersigned treats this as an undisputed fact.]

58. Plaintiff admits that, other than the Sales Auditor position, she is not aware of any open position that could have accommodated her restrictions during the time she was on leave. [<u>Note:</u> In her response, Plaintiff says this paragraph is disputed, but she does not challenge its accuracy. Instead, she says that Costco could have offered her a reasonable accommodation "regarding some of the lifting responsibilities." The Undersigned therefore treats this paragraph as undisputed.]

<u>Additional Facts Highlighted by Plaintiff Marquez</u>

59. Plaintiff's supervisor, De La Milera, voluntarily gave Marquez his login credentials to adjust timecards and assist him in his duties.

60. De La Milera was not demoted or suspended for his role in giving Marquez the login credentials to adjust employee timecards.

61. De La Milera was not demoted or suspended for his role in giving Ms. Marquez his login credentials.

62. N/A.

63. N/A.

64. Plaintiff previously experienced medical problems due to her back and headaches. These issues are documented in Plaintiff's employee file.

65. Costco's management knew that Marquez used eight (8) non-consecutive days of FMLA leave in 2014.

66. N/A.

67. In 2010, Marquez was on leave for similar issues relating to her medical condition.

68. During the nine-month period Plaintiff was on leave, Defendant was not paying Marquez.

69. Costco did not advise Marquez of available positions.

70. Defendant maintains that medical leave was the only accommodation available for Marquez.

71. In the intervening time, Defendant hired new, seasonal employees.

72. Additionally, in the intervening time, a Sales Auditor position became available during Marquez's leave period, Marquez had trained the previous sales auditor, and Defendant did not offer Marquez the position or notify her that it was available.

73. Defendant filled the Sales Auditor position with Brenda Cardenas, who is considerably younger than Marquez.

74. While Marquez's duties as a Payroll Clerk involved continuous sitting and required her to lift or carry 11-20 pounds of weight occasionally, her duties as a Front

End Assistant required her to frequently carry those weights -- and required that Marquez "occasionally" lift or carry 75 to 100 pounds.

## II.   Applicable Legal Standards and Analysis

### a.   Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citation omitted). Thus, the Court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party must "show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). If the movant does so, then "the burden shift[s] to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.* at 608. A genuine factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir.

17

1999). The opposing party must proffer more than "a mere scintilla of evidence" to show "that the jury could reasonably find for that party." *Abbes v. Embraer Servs., Inc.*, 195 Fed. Appx. 898, 899-900 (11th Cir. 2006) (internal quotations omitted).

When deciding whether summary judgment is appropriate, the Court views all facts and resolves all doubts in favor of the nonmoving party. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (affirming order denying the defendant's summary judgment motion on qualified immunity because of a factual issue). And when conflicts arise between the facts evidenced by the parties, courts must "credit the nonmoving party's version." *Id.* at 1252.

If there are any factual issues, then the Court must not decide them; it must deny the summary judgment motion, and the case then proceeds to trial. *See Whelan v. Royal Caribbean Cruises Ltd.*, No. 1:12-CV-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (citing *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981)). The Court cannot weigh conflicting evidence to resolve factual disputes. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (citation omitted).

Even when the parties "agree on the basic facts, but disagree about the inferences that should be drawn from these facts," summary judgment "may be inappropriate." *Whelan*, 2013 WL 5583970, at *2; *see generally Johnson v. NCL (Bahamas) Ltd.*, No. 16-CV-

18

21762, 2017 WL 1293770, at *2 (S.D. Fla. Feb. 3, 2017) (denying summary judgment motion in passenger's slip and fall lawsuit against cruise ship operator).

Our Circuit does not hesitate to reverse orders improvidently granting summary judgment motions, and it has noted that "even if a district court 'believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices.'" *Feliciano*, 707 F.3d at 1252 (citing *Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006)).

> As a general principle, a plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature.

*Feliciano*, 707 F.3d at 1253.

### b. **Statute of Limitations**

Costco contends that Plaintiff's claims arising from her suspension and demotion from Payroll Clerk to Front End Assistant are time-barred because she failed to timely file her Charge of Discrimination (the "Charge") with the Equal Employment Opportunity Commission ("EEOC").

The ADEA "requires that a plaintiff exhaust certain administrative remedies, which begins by filing a timely charge of discrimination with the EEOC, before filing a suit for employment discrimination. For a charge to be timely in a deferral state, like

Florida, it must be filed "within 300 days of the last discriminatory act." *Brooks v. CSX Transp., Inc.*, 555 Fed. Appx. 878, 880 (11th Cir. 2014) (internal citations omitted) (holding all of plaintiff's ADEA and Title VII failure-to-promote claims were time-barred where she filed her EEOC charge more than 300 days after the promotion denials); *Cotton v. Martin Cty.*, 306 F. Supp. 2d 1182, 1185 (S.D. Fla. 2004).

A claim is time-barred if it is not filed within these time limits. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (holding that only discrete acts of discrimination that occurred within 300 days of the date that the plaintiff filed his charge with the EEOC were actionable).

Further, the courts in this Circuit have long recognized that both disciplinary suspensions and demotions are **discrete** acts, starting the clock on the 300-day charge-filing period. *See Perry v. S. Wine & Spirits of Am., Inc.*, No. 8:10-cv-2876-T35-EAJ, 2012 WL 12897391, at *3 (M.D. Fla. Mar. 5, 2012) ("For discrete acts, such as termination or a suspension, the act occurred on the day that it happened. A party therefore must file a charge within . . . 300 days of the date of the act or lose the ability to recover for it.") (internal quotation marks and citations omitted) (aff'd, 511 F. App'x 888 (11th Cir. 2013)); *Green v. Office of the Sheriff's Office*, No. 3:99- CV-658-J-21-HTS, 2002 WL 35630102, at *3 (M.D. Fla. Nov. 4, 2002) (finding defendant's suspension of plaintiff without pay was a discrete act); *Restrepo v. Int'l Vapor Group, Inc.*, No. 16-24208-CIV-Lenard/Goodman, 2017

WL 2361942, at *4 (S.D. Fla. May 26, 2017) (discrete discriminatory acts, such as **demotion**, cannot form the basis of a continuing violation); *Schober v. Town of Fort Myers Beach*, No. 2:13-CV-857-FtM-38CM, 2014 WL 6469881, at *5 (M.D. Fla. Nov. 17, 2014) (holding plaintiff's allegations that defendant **demoted** her and **constructively discharged** here were untimely because it was a discrete act that allegedly occurred prior to the applicable statutory period).

Marquez filed her Charge with the EEOC on April 26, 2016. Thus, any claims relating to allegedly unlawful employment practices that occurred more than 300 days before April 26, 2016 (i.e., before July 1, 2015) are time-barred. Plaintiff's suspension and demotion occurred in late March and early April 2015 — three months before the cut-off date. Therefore, any claims stemming from Plaintiff's suspension and demotion, whether arising under the ADA or the ADEA, are time-barred, and Costco is entitled to summary judgment as to those claims.

Marquez argues that her claims are not time-barred because the purportedly discriminatory acts are not separate acts, but, rather, were part of an **ongoing** discrimination which arose from the same nucleus of operative facts in which there is a substantial nexus between the acts. In advancing this position, she relies on *Robinson v. Caulkins Indiantown Citrus Co.*, 701 F. Supp. 208, 211 (S.D. Fla. 1988), *Wolf v. MWH*

*Constructors, Inc.*, 34 F. Supp. 3d 1213, 1222 (M.D. Fla. 2014), and *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1221 (11th Cir. 2001).

The Undersigned does not find this argument or the case authority persuasive.

As outlined above, Courts in the Eleventh Circuit have consistently held that both disciplinary suspensions and promotions are discrete acts that start the 300-day clock for filing an administrative charge, and that such discrete acts cannot form the basis of a continuing violation.

*Wolf* does not support Plaintiff's argument. Indeed, the decision makes clear that "[t]he continuing violation doctrine does not apply to discrete acts of discrimination, such as a promotion denial or refusal to hire." 34 F. Supp. 3d at 1222 (internal quotation marks and citations omitted) (declining to apply continuing violation doctrine where plaintiff labeled discrete acts as "continuing violations").

Plaintiff also relies on a passage from *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1221 (11th Cir. 2001): "[t]hese courts held that claims of discrimination were not time-barred because some acts of discrimination against the individual plaintiffs had occurred within the statutory period, even though prior acts did not. The earlier acts of discrimination were actionable because they were part of a continuing violation." [ECF No. 31, p. 3].

However, neither of the cases discussed in *Hipp* — *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287 (8th Cir. 1997) and *Roberts v. N. Am. Rockwell Corp.*, 650 F.2d 823 (6th Cir. 1981) — involved a disciplinary suspension or demotion. Moreover, *Hipp* was decided before the Supreme Court's decision in *Nat'l R.R. Passenger Corp. v. Morgan*, which clarified that a plaintiff "can only file a charge to cover discrete acts that 'occurred' within the appropriate time period." 536 U.S. 101, 114 (2002).

In fact, as another court in this district has noted, *Morgan* "effectively abolish[ed] the 'continuing violation' doctrine as applied to discrete acts." *MacKenzie v. City of Miami Beach*, Case No. 07-21357-Civ-Ungaro, 2008 WL 11331842, at *7 (S.D. Fla. Apr. 16, 2008) (quoting *Morgan*, 536 U.S. at 113).

Therefore, the Undersigned finds that summary judgment in Costco's favor is appropriate on statute of limitations grounds for the suspension and demotion claims.

However, Marquez's claims for Costco's failure to provide her with a reasonable accommodation and for constructively discharging her are not barred by the 300-day statute of limitations – and Costco has not argued to the contrary. Costco is not seeking summary judgment on those two counts on *that* ground.

### c.  Constructive Discharge Claim

Constructive discharge occurs "when an employer deliberately makes an employee's working conditions so unbearable that a reasonable person would be

compelled to resign." *Zarza v. Tallahassee Hous. Authority*, 686 Fed. Appx. 747, 753 (11th Cir. 2017) (citation omitted).

"In evaluating constructive discharge claims, [the Court should] not consider the plaintiff's subjective feelings. Instead, [it should] employ an objective standard." *Hipp*, 252 F.3d at 1231 (citation omitted). A constructive discharge claim is "not a jury question unless a plaintiff presents substantial evidence that employment conditions were **intolerable.**" *Siudock v. Volusia Cty. Sch. Bd.*, 568 Fed. Appx. 659, 664 (11th Cir. 2014) (citation omitted) (emphasis added).

The Eleventh Circuit has "required pervasive conduct by employers before finding that . . . a constructive discharge occurred." *Hipp*, 252 F.3d at 1231.

Plaintiff has pointed to no evidence showing that a reasonable person in her position would have felt *compelled* to resign. During her exit interview, Plaintiff (1) had no suggestions as to how Costco could improve; (2) stated that she might come back in the future; and (3) made no mention whatsoever of any allegations of discrimination.

Being placed on a leave of absence during a time period when she was temporarily unable to perform the essential functions of her job is a far cry from the **pervasive** conduct required to support a finding of constructive discharge. *See Hipp*, 252 F.3d at 1231, 1233 (reversing the district court's finding of constructive discharge where plaintiff claimed that management criticized and harassed him, told him that "older people are harder to

get to change," and told him he should quit if he was unable to do his job); *Nettles v. LSG Sky Chefs*, 211 Fed. Appx. 837, 839 (11th Cir. 2006) (affirming summary judgment for employer where plaintiff alleged that defendant, inter alia, "undermined his authority in front of customers, peers, and subordinates; . . . excluded him from a business meeting . . . and denied [him] the opportunity to make a presentation at a meeting; . . . and . . . offered him [a position] on terms and conditions less favorable than those offered to [his peers].").

Marquez argues that Costco "created an economic situation," which left her no other option but to resign "so that she was free to search for alternate employment and could fully support herself and her family." [ECF No. 31, p. 7]. But our Circuit's case law does not permit this type of vague, non-pervasive scenario to be sufficient to create a constructive discharge theory sufficient to escape a defense summary judgment. *Sawyer v. Jackson* 505 Fed. Appx. 890, 892 (11th Cir. 2013) (affirming summary judgment for employer where plaintiff "assert[ed] that she was forced to quit because her direct supervisor made a belittling comment regarding her sick leave, told her that he was considering further disciplinary action against her . . . , refused to authorize a travel request, and once removed her computer from her desk in order to recover a document that she had inadvertently deleted"); *Menzie v. Ann Taylor Retail, Inc.*, 549 Fed. Appx. 891, 895 (11th Cir. 2013) (affirming summary judgment for employer where sole incident

alleged was that manager criticized plaintiff's work performance and disability during a one-on-one meeting).

A constructive discharge claim "does not present a jury issue unless a plaintiff produces **substantial** evidence that conditions were **intolerable.**" *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1155 (11th Cir. 2002) (emphasis added). Plaintiff has not met this burden.

In her Response, Plaintiff relies on *Poole v. Country Club of Columbus, Inc*., 129 F.3d 551, 553 (11th Cir. 1997) to support her contention that she was constructively discharged. [ECF No. 31, p. 6]. But her treatment was not even remotely similar to the plaintiff's experience in *Poole*.

In *Poole*, the plaintiff presented evidence and allegations that: (1) she was routinely displaced from her job duties as the manager's secretary; (2) the company sent a security guard to her home at night to retrieve her key to the manager's office under the premise that the security guard had lost his own key, but then never returned her key; (3) the company refused to submit a workers' compensation claim to the insurance carrier after she was injured at work; (4) the manager made remarks to the plaintiff and others regarding her age, such as "you're as old as my mother," "[I am] too fast paced for an elderly secretary," and "[plaintiff] was too old, had too many lines in her face, and too many gray hairs"; (5) she was displaced from her desk and computer and instead

required to stuff envelopes for three days; (6) the manager instructed other employees not to speak to her; and (7) she was eventually relieved of all existing responsibilities and transferred to a new position in the business office where she was given only a chair and no desk, no place to store her belongings, and no duties or responsibilities. 129 F.3d at 552.

Plaintiff asserts that, "like the plaintiff in *Poole*, [she] was effectively denied employment, continuously." [ECF No. 31, p. 7]. In fact, she argues that her own case is "more egregious . . . because during the nine (9) month period of leave, Plaintiff had no income from Defendant." *Id.* But even if Costco knew or should have known that performing the duties of the Front End Assistant position would be physically difficult for her, Marquez has not shown that Costco engaged in any of the egregious behavior described in *Poole* or that it otherwise created **objectively intolerable** working conditions.

Plaintiff repeatedly claims that she had no choice but to resign so she could be free to search for alternate employment. But it is undisputed that Plaintiff was on a leave of absence for the better part of nine months before her resignation, so she had plenty of free time to seek employment elsewhere if she so desired.

Moreover, although Plaintiff's leave of absence was considered "unpaid," she did collect income via Costco's disability benefits provider, Unum, both during her leave and after her resignation.

Because Plaintiff has failed to produce substantial evidence that her working conditions were intolerable, Costco is entitled to summary judgment on her constructive discharge claim.

### d.  Age Discrimination

As outlined above, Marquez's age discrimination claim under the ADEA is time-barred. Nevertheless, in the event that an appellate court determines I am incorrect about that, I will, in an abundance of caution, provide an alternate approach (i.e., a substantive evaluation of the merits of the claim and of Costco's summary judgment motion).

Plaintiff has proffered no direct evidence of age discrimination. When evaluating ADEA claims based on circumstantial evidence, courts apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Collier v. Harland Clarke Corp.*, 820 Fed. Appx. 874, 879 (11th Cir. 2020) (per curiam).

To state a *prima facie* case of age discrimination, a plaintiff must show: (1) she was a member of the protected age group (i.e., at least 40 years old); (2) she was subjected to an adverse employment action; (3) she was qualified to do the job; and (4) she was replaced by, or otherwise lost a position to, a younger individual. *Chapman v. AI Transport*, 229 F.3d 1012, 1024, 1043 (11th Cir. 2000).

Once an employee has established a *prima facie* case, and the employer proffers a legitimate, nondiscriminatory reason for its decision, the burden then shifts back to the

28

employee to show that the employer's proffered reason was a pretext for discrimination. *Collier*, 820 Fed. Appx. at 880.

Because Plaintiff has no direct evidence that Costco suspended and demoted her because of her age, she must rely on the indirect method first established in *McDonnell Douglas*. It is undisputed that Plaintiff was a member of the protected group (age 46 at the time of the demotion) and that she was subject to an adverse employment action (demotion).

But Marquez cannot show that the person who filled the position from which she was demoted was "substantially younger" than her, as required in this Circuit. *See Cooper v. Georgia Dep't of Transp.*, 837 F. App'x. 657, 670 (11th Cir. 2020) (per curiam) (affirming summary judgment in favor of employer where employee was replaced by someone one year younger).

"Substantially younger" has been interpreted to mean three or more years younger. *Id.* An age difference of two years, without additional proof of discriminatory intent, is not enough. *See Pace v. S. Ry. Sys.*, 701 F.2d 1383, 1390 (11th Cir. 1983) (affirming summary judgment in favor of employer where employee was replaced by someone two years younger).

The Payroll Clerk position was filled in April 2015 by Maria Lacayo, who was 44 years old at the time — only two years younger than Plaintiff. Because Plaintiff cannot establish that the role was filled by someone substantially younger, her claim fails.

This means that Marquez has not established her *prima facie* case of age discrimination.

Setting aside this failure of proof, Costco would still be entitled to summary judgment on the age discrimination claim because it had a legitimate, nondiscriminatory reason for demoting her.

It is undisputed that Costco demoted Plaintiff from Payroll Clerk to Front End Assistant because Plaintiff violated Costco's policy when she changed her own time record using her manager's login credentials. Therefore, the burden shifts back to Plaintiff to show that Costco's proffered reason is a pretext for discrimination. Plaintiff has offered no such evidence, making only vague allegations that "[o]ther younger employees of [Costco] have received counseling and warnings for past infractions." [ECF No. 1, ¶ 24].

Plaintiff points to no specific comparators, aside from her manager, De La Milera, who was issued a permanent Employee Counseling Notice in connection with the incident that led to Plaintiff's suspension and demotion.

Although De La Milera was not suspended or demoted, he is not a proper comparator for Marquez because he was not similarly situated to her in all relevant

30

respects. *See Phillips v. Aaron Rents, Inc.*, 262 F. App'x 202, 208, 209 n.4 (11th Cir. 2008) (finding plaintiff's proffered comparators were "not sufficiently similarly situated" to be valid comparators to plaintiff for any of his discrimination claims where they held different job responsibilities and there was no evidence that they engaged in the same misconduct that the plaintiff engaged in); *see also Siddiqui v. NetJets Aviation, Inc.*, Case No. 16-23924-Civ-Williams, 2018 WL 3541854, at *10 (S.D. Fla. July 23, 2018) ("Misconduct that is merely 'similar' to the misconduct of the disciplined plaintiff is insufficient; the quantity and quality of the comparator's conduct must be **nearly identical** to that of the plaintiff.") (internal quotation marks and citations omitted) (emphasis added).

De La Milera and Plaintiff are not nearly identical.

First, De La Milera was a manager and Plaintiff's immediate supervisor; Plaintiff was an hourly employee.

Second, and more importantly, however, De La Milera was disciplined for a different offense — *sharing his login credentials* with another employee — and never used another employee's login credentials to *approve adjustments to his own time records*. Thus, De La Milera was treated differently than Plaintiff because the offense was different. He did not commit the same infractions as Marquez. Plaintiff used another employee's login credentials **and** approved changes to her own time records, while De La Milera merely shared his login credentials.

31

To the extent that Plaintiff alleges that age was a factor in her purported constructive discharge, Plaintiff fails to identify any particular individual who replaced her. *See Gortemoller v. Int'l Furniture Mktg., Inc.*, 434 F. App'x. 861, 863 (11th Cir. 2011) (per curiam) (to state a prima facie case under the DEA, a plaintiff must show that he was replaced by, or otherwise lost his position to, a younger individual).

To state a *prima facie* claim of discriminatory failure to hire, "a plaintiff must show that (1) she was a member of a protected class; (2) she *applied for* and was qualified for an available position; (3) she was rejected; and (4) the defendant filled the position with a person outside the protected class." *Childress v. Caterpillar Logistics Servs., Inc.*, 369 F. App'x 95, 96 (11th Cir. 2010) (per curiam) (emphasis added).

Therefore, although Plaintiff claims that Costco hired a younger employee in early 2016 for an open Sales Auditor position that might have been compatible with her restrictions, it is undisputed that she **never applied** for the Sales Auditor job. *See Giles v. BellSouth Telecomm., Inc.*, 542 F. App'x 756, 759 (11th Cir. 2013) (per curiam) (concluding plaintiff's ADEA and Title VII failure to promote claim was "squarely foreclosed by circuit precedent" because plaintiff never applied for the promotion he contended he should have received).

Plaintiff seems to contend that Costco was under some sort of obligation to notify her personally of the Sales Auditor opening in order to "giv[e] Plaintiff . . . an opportunity

to apply." [ECF No. 31, p. 8]. However, Plaintiff proffers absolutely no legal authority whatsoever to support her contention that Costco had a duty to notify her of the opening. Although neither side called the Court's attention to an on-point case, it seems that a plaintiff like Marquez must actually apply for the position in order to trigger an accommodation claim. *See e.g.*, *U.S. EEOC v. St. Joseph's Hospital, Inc.*, 842 F.3d 1333, 1346 (11th Cir. 2016) ("We agree that the ADA does not require reassignment without competition for, or preferential treatment of, the disabled."). In order to compete for a position, of course, Marquez had to apply for the position. She did not.

Moreover, Plaintiff does not dispute that open positions are posted at Costco – on the intranet and in the break room – that she could have checked the postings from any Costco warehouse, and that she did not do this.

The Undersigned declines Marquez's implicit request that I create new law by requiring an employer to advise a worker seeking an accommodation of potential job openings, especially when fundamental policy themes are to the contrary. *See St. Joseph's Hospital*, 842 F.3d at 1346-47 (the ADA not intended to turn nondiscrimination into discrimination against the non-disabled and noting the ADA "is not an affirmative action statute" and "only requires [the employer] to allow [the disabled employee] to compete for the job, but does not require [the employer] to turn away a superior applicant.").

33

### e.  Disability Discrimination Claim

Similar to my approach with the age discrimination claim, I am providing an alternate analysis of Marquez's disability discrimination claim in case an appellate court were to disagree with the conclusion that the claim is time-barred.

As with her age discrimination claims, Plaintiff has no direct evidence of disability discrimination. Courts apply the *McDonnell Douglas* burden-shifting framework to ADA claims where there is no direct evidence of discrimination. *See Collado v. United Parcel Serv. Co.*, 419 F.3d 1143, 1150 (11th Cir. 2005).

To establish a *prima facie* case, "[a] plaintiff asserting a disability discrimination claim must establish that she (1) has a disability; (2) is qualified for the job, with or without reasonable accommodations; and (3) suffered an adverse employment action because of her disability." *Menzie*, 549 F. App'x at 893-94 (citation omitted).

"An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Id*. at 894 (internal quotation marks and citations omitted).

Once a plaintiff puts forth a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See*

34

*Jacobsen v. City of West Palm Beach*, 749 F. App'x 807, 810 (11th Cir. 2018). Once the defendant has met this burden, the burden shifts back to the plaintiff to prove that the defendant's articulated reason is pretext for unlawful discrimination. *Id*.

"To show pretext, the evidence produced must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Id*. (quotation marks and citation omitted).

Plaintiff's Complaint does not allege that Costco demoted her because of her disability (i.e., her back condition, which prevented her from lifting things). However, even if Plaintiff's Complaint did expressly assert that her medical condition factored into Costco's disciplinary decisions (which it does not), any alleged disability discrimination stemming from Plaintiff's suspension and demotion would run head-on into her failure to file a timely charge and her inability to demonstrate that Costco's proffered reasons were pretextual.

Moreover, for the reasons discussed above, Plaintiff has failed to meet her burden to establish constructive discharge, so any alleged disability claim stemming from Plaintiff's separation from her employment also fails.

Finally, aside from the suspension/demotion related to Plaintiff using her manager's login credentials to adjust her own timecard, and her allegations of

constructive discharge, Plaintiff has not pointed to any other adverse employment action suffered. Thus, Plaintiff has failed to establish the third required element of a disability discrimination claim.

For all these reasons, Plaintiff's disability discrimination claim fails as a matter of law, and Costco is entitled to summary judgment.

### f.  Failure to Accommodate Claim

The ADA requires employers to provide reasonable accommodations "to the known physical or mental limitations of otherwise qualified individuals with a disability" who are either applicants for employment or current employees. 42 U.S.C. § 12112(5)(a); *see also Lucas v. W.W. Grainer, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001) (holding that an employer must provide a reasonable accommodation for an employee with a known disability).

An accommodation is "any change in the work environment or in the way things are customarily done that enables an individual with a disability to enjoy equal employment opportunities." 29 C.F.R. § Pt. 1630, App. § 1630.2(o). A modification or adjustment is "reasonable" if it "seems reasonable on its face, i.e., ordinarily or in the run of cases." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002).

However, an employer is not required to provide an accommodation that would impose an undue hardship on the operation of the business. 42 U.S.C. § 12112(5)(a).

36

Unless the need for accommodation is obvious, it is generally the responsibility of the qualified individual to inform the employer that an accommodation is needed. 29 C.F.R. § Pt. 1630, App. An employer is not automatically expected to make an accommodation for a disability it is unaware of. *Id*.

Therefore, "the duty to provide a reasonable accommodation [under the ADA] is not triggered unless a specific demand for an accommodation has been made." *Barneman v. Int'l Longshoreman Assoc. Local 1423*, 840 F. App'x 468, 478 (11th Cir. 2021) (citing *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999).

A reasonable accommodation may include, but is not limited to:

i.  Making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

ii. Job restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or modifications of equipment or devices; appropriate adjustment or modifications of examinations, training materials, or policies; the provision of qualified readers or interpreters; and other similar accommodations for individuals with disabilities.

29 C.F.R. § 1630.2(o)(2)(i)-(ii); 42 U.S.C. § 12111(9).

Once a reasonable accommodation is requested by the disabled employee, "the employer must make a reasonable effort to determine the appropriate accommodation," which is typically determined through a "flexible, interactive process that involves both the employer and the individual with a disability." 29 C.F.R. § Pt. 1630, App. The goal of determining a reasonable accommodation is to "enable the individual with a disability to perform the essential functions of the position held or desired." *Id*. If multiple accommodation choices are identified, the employer has the ultimate discretion to choose which effective accommodation will be implemented, as long as the chosen accommodation is effective. *Id*.

The reasonable accommodation requirement does not require reassignment of a disabled employee to a vacant position. *U.S. E.E.O.C. v. St. Joseph's Hospital, Inc.*, 842 F.3d 1333 (11th Cir. 2016). 42 U.S.C. § 12111(9)(b) states that reasonable accommodations *may* include reassignment to vacant position; however, this is a non-exhaustive list of possible reasonable accommodations. *Id*. Reassignment to a vacant position may not always be reasonable, and the word "may" implies that this is the case. *Id*.

In the Eleventh Circuit, it is "well settled" that ADA precedent requires that employers provide "alternative employment opportunities reasonably available under the employer's existing policies." *Sch. Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 289 n.19 (1987); *see also Frazier–White v. Gee*, 818 F.3d 1249, 1257 (11th Cir. 2016) (holding that the

38

ADA does not require employers to reassign employees with disabilities if it is in violation of its governing civil service rules).

The Supreme Court in *US Airways v. Barnett* 535 U.S. 391, 406 (2002) held that the ADA does not ordinarily require an employer to assign a disabled employee to a particular position if another employee is entitled to that position under the employer's seniority system. In the instant case, there was no seniority system in question but, instead, a best-qualified applicant standard.

Nevertheless, the holding in *Barnett* is instructive because requiring reassignment in violation of an employer's best-qualified hiring policy is not necessarily reasonable because passing over the best-qualified applicant in favor of a less-qualified applicant may not be reasonable for the employer. The ADA only requires an employer to allow an individual with a disability to compete *equally* with other applicants for a vacant position; there is no ADA requirement of reassignment without competition. *St. Joseph's Hospital*, 842 F.3d at 1345.

Moreover, an employer's reassignment duty does not require **promotion** of the disabled employee. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001) (collecting cases); *see also* 29 C.F.R. 1630, App. § 1630.2(*o* ) ("It should also be noted that an employer is not required to promote an individual with a disability as an accommodation.").

Similarly, a promotion is not a reasonable accommodation, even if the plaintiff had previously filled the higher-level role. *See Alvarez v. Sch. Bd. of Broward Cty.*, 208 F. Supp. 3d 1281, 1286 (S.D. Fla. 2016) (granting summary judgment for employer where employee claimed that after a previous demotion he should have been immediately reinstated to his previously held, higher-level position once he submitted a request for a reasonable accommodation, noting "an employer's reassignment duty does not require promotion of the disabled employee.").

If the job for which Marquez says she was qualified (i.e., Sales Auditor) was in fact a promotion, then her argument is flawed from the start.

In order to evaluate Marquez's arguments, it is necessary to evaluate, on a position-by-position basis, the jobs she argues she could have performed (assuming that she applied for them, which she did not) and the essential functions of the jobs.

Whether a function is essential is evaluated on a case-by-case basis by examining a number of factors. *Davis v. Florida Power & Light* Co, 205 F.3d 1301, 1305 (11th Cir. 2000). The ADA provides that consideration shall be given to the employer's judgment as to what functions of a job are essential and the employer's written description for that job. *See* 42 U.S.C. § 12111(8).

The ADA regulations provide that other factors to consider are:

(1) The amount of time spent on the job performing the function; (2) The consequences of not requiring the incumbent to perform the function; (3)

40

The terms of the collective bargaining agreement; (4) The work experience of past incumbents in the job; and/or (5) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3) (2021).

Courts consider employer's judgment as a factor in determining whether a job function is essential. *D'Angelo v. ConAgra Foods*, 422 F.3d 1220, 1230 (11th Cir. 2005). Employer's judgment is 'entitled to substantial weight' when deciding what functions are essential. *Id*. For example, "if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8); *see also Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1526 (11th Cir. 1997). That means that statutorily, the court is required to consider the written job description as evidence of whether a function is essential to the job. 42 U.S.C. §12111(8).

However, the employer's judgment alone is not conclusive to determining whether the function is essential. *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1285 (11th Cir. 2007). If the employer's judgment was conclusive, then an employer could avoid the ADA requirement of making a reasonable accommodation by simply asserting a function is "essential." *Samson v. Federal Exp. Corp.*, 746 F.3d 1196, 1201 (11th Cir. 2014).

The job descriptions at issue here – and the tasks deemed to be essential functions – are not merely rhetoric contained in an affidavit. Instead, they are in writing and were

submitted to the Court as exhibits to the declaration of Cindy Schmertzler, Costco's Director, Integrated Leave.

Because written job descriptions are evidence of what job functions are essential, they are given substantial weight by the court. 42 U.S.C. §12111(8); *Holly v. Clairson Indus, LLC,* 492 F.3d 1247, 1258 (11th Cir. 2007); *see also W.W. Grainger, Inc.,* 257 F.3d 1249 (finding that written job description, along with other evidence, showed that lifting and physical duties were essential functions of the Distribution Representative Job).

Although the specific word choice of "occasional" or "frequent" in a job description do not appear to be dispositive, the amount of time spent on a task can be of significance. *See* 29 C.F.R. §1630.2(n)(3)(iii). If a function is marginal or infrequently performed, it can be used as evidence to rebut the presumption that the function is essential. *See Mason v. United Parcel Service Co. Inc.,* 674 F. App'x 943, 952 (11th Cir. 2017). Furthermore, if a function is frequently performed, it can be used as evidence that the function is essential to the job. *See* E.E.O.C. Technical Assistance Manual § 2.3(a).

However, "[t]he percentage of time spent on [a job] function is not dispositive of whether the function is an essential function." *Flores v. American Airlines Inc.,* 184 F.Supp 2d 1287, 1292 (S.D. Fla. 2002). In *Flores,* the court held that even though the plaintiff asserted that cleaning the cabin was an infrequently performed function of his job, it was still an essential function. *Id; see also Holbrook* 112 F.3d at 1526 (rejecting argument that

infrequent performance means that a job function is not an essential function). Furthermore, "sometimes a function that is performed infrequently may be essential because there will be serious consequences if it is not performed." E.E.O.C. Technical Assistance Manual § 2.3(a)(3)(d). For example, landing a flight is an essential job function for an airline pilot; however, the task only takes a few minutes. *Id.*

Costco's weight-lifting requirements are expressly designated in the "Physical Demands" section of the "Job Analysis" for each position. That section includes a chart, listing different categories of weight (e.g., up to 10 pounds, 11-20 pounds, 51-75 pounds), along with the specific type of movement (e.g., lift/carry below waist and lift/carry waist/chest). The chart also includes codes for the frequency of the essential function (e.g., never, occasionally, frequently and continuously). [ECF No. 30-4].

There is another threshold point which should be flagged before wading into the specifics of particular positions.

Plaintiff's claims of failure to accommodate under the ADA appear to be premised on the assumption that Costco could and should have facilitated her return to work as an alternative to granting her leave from April 6, 2015 through November 18, 2015 and again from December 3, 2015 through her resignation on January 28, 2016. But the notes Plaintiff submitted from her treating providers stated that she was unable to work *at all* from: April 6, 2015 through April 20, 2015 and from May 4, 2015 through June 11, 2015.

By allowing Plaintiff to take a leave of absence during those dates, Costco provided the only accommodation it could have.

In addition, Marquez was released to return to work effective November 19, 2015, and she worked in the Front End Assistant role from approximately November 19, 2015 until December 2, 2015. She called out sick on December 3, 2015.

Thus, Plaintiff's failure to accommodate claim must necessarily be limited to the periods from April 21, 2015 through May 3, 2015, from June 12, 2015 through November 18, 2015, and from December 4, 2015 through January 27, 2016.

However, throughout each of these three periods, the undisputed record evidence is that Plaintiff was subject to medical restrictions that even she admits would have prevented her from performing the essential functions of her job as a Front End Assistant.

Marquez does not challenge that the essential functions of the positions at issue are the ones designated as such in Costco's written job descriptions, and she, therefore, does not dispute that the essential functions involve lifting certain weights in certain circumstances. She simply says, in conclusory fashion, that Costco should have made accommodations concerning the weight component, impliedly suggesting that Costco should have eliminated or reduced the weight requirements of the positions.

Marquez's implicit request (that she should have been permitted to hold positions with modifications to the amount of weight she had to lift) is not reasonable "because the

ADA does not require employers to reallocate or eliminate essential job duties." *Shephard v. United Parcel Service, Inc.*, No. 5:08-cv-0906, 2011 WL 13175671 (N.D. Ala. March 28, 2011) (citing *Davis*, 205 F.3d at 1305); *see also Anderson v. Embarq/Sprint*, 379 F. App'x 924, 928 (11th Cir. 2010) (per curiam) (employee's request to perform "light duty work" due to his reduced physical capacities was unreasonable because **it would eliminate lifting**, an essential function of his job).

Costco is not required to reassign the weight-lifting duties to another employee because an employer is not required to "reallocate job duties that would alter the essential function of a job." *Medearis v. CVS Pharmacy, Inc.*, 646 F. App'x 891, 896 (11th Cir. 2016); *see also Williams v. Revco Discount Drug Centers, Inc.*, 552 F. App'x 919, 920 (11th Cir. 2014) (holding that eliminating an essential function of the plaintiff's job and reallocating those functions to another employee was not required under the ADA and explaining that "if an individual is unable to perform [the essential functions of a job], even with the accommodation, she cannot meet the definition of qualified" and is not covered by the ADA).

The essential functions of the Front End Assistant role require frequent bending or stooping, frequent squatting; frequent lifting or carrying below the waist 11 to 50 pounds; occasional lifting or carrying 51 to 100 pounds; frequent pushing or pulling 11 to 20 pounds; occasional pushing or pulling 21 to 50 pounds; and frequent lifting or carrying

at the waist or chest 11 to 20 pounds. Plaintiff admits that she was unable to perform the essential functions of the Front End Assistant role during the entire time that she was on a leave of absence from April 2015 through January 2016.

Specifically, from April 13, 2015 through May 13, 2015, Marquez's physical therapist certified that she could do no lifting greater than 10 pounds, no twisting, no bending, and no pushing or pulling. Likewise, from approximately June 5, 2015 through at least July 11, 2015, Plaintiff was unable to lift more than 10 pounds, push more than 10 pounds, bend, or twist. These restrictions were implemented by Plaintiff's neurologist, Dr. Adams.

Plaintiff also submitted an overlapping note dated June 9, 2015, from her primary care physician, Dr. Rojas, recommending that she should not pull, push, or lift more than 20 pounds until she was cleared by Dr. Adams. From July 13, 2015, and continuing for a period of approximately 12 weeks (or until approximately October 5. 2015), Plaintiff could not lift more than 15 pounds. From September 30, 2015, and continuing for a period of approximately four weeks (i.e., approximately October 28, 2015), Plaintiff could not lift more than 20 pounds. And an October 28, 2015 letter from the same treating provider left her restrictions unchanged until her unrestricted release on November 19, 2015.

Finally, while the precise details of her restrictions from December 4, 2015 through her resignation at the end of January 2016 were never fully clarified, it is undisputed that

she was subject to a 20-pound lifting restriction from at least December 4 until at least the middle of January 2016, and that she never provided any further documentation releasing her from that restriction before her resignation.

<u>Were Other Positions Required as An Accommodation?</u>

Marquez now argues that she should have been offered the Sales Auditor position, which she alleges became vacant at some point during her leave of absence but was filled by a 29-year-old employee.

But the Sales Auditor role is a service clerk position and Marquez's Front End Assistant role is a service assistant role. Therefore, moving Marquez from a service assistant role to a service clerk role is a *promotion*. Thus, for Plaintiff to be moved from her role as Front End Assistant to an open Sales Auditor position, Costco would have been required to promote Marquez – but it is well-settled that a promotion is not a reasonable accommodation. *See Alvarez*, 208 F. Supp. 3d at 1286 (holding defendant was under no obligation to grant plaintiff's request for "reinstatement" to his prior higher-paying position where plaintiff was effectively seeking a promotion).

Moreover, Plaintiff admits that she is not aware of any other specific open position, aside from Sales Auditor, that she believes could have accommodated her restrictions on lifting weights during the time that she was out on leave.

Plaintiff now argues that she could have worked at the jewelry counter as a Major Sales Assistant but she admits that Major Sales Assistants, in addition to working the jewelry counter, *also* have to assist with other products, many of which weigh more than 50 pounds. Moreover, Marquez was not aware of (nor were there) any posted positions that required only jewelry counter work. The essential functions of the Major Sales Assistant job require occasional lifting of up to 75 pounds – well beyond the restrictions imposed by her health care providers.

Plaintiff also asserts that she could have worked as a Membership Clerk, but the essential functions of the Membership job also require the ability to lift more than 20 pounds, which exceeds her medical limitations. In addition, Marquez admits that she does not know whether there was a posted opening for a Membership Clerk or Membership Assistant. Moreover, as noted earlier in this Order, there is no "Membership Clerk" position at Costco. Instead, there is a Membership Assistant position, an essential function of which requires occasional lifting of up to 50 pounds – which is directly at odds with the physical limitations imposed by her doctors.

To be considered a "qualified individual" under the ADA, an employee must be able to perform all essential functions of her job and cannot cherry-pick which duties she wants to perform. *See Holly*, 492 F.3d at 1256 ("the ADA does not require the employer to eliminate an essential function of the plaintiff's job") (citation omitted).

Given this legal principle, the Undersigned rejects Marquez's argument that Costco should have offered Plaintiff a reasonable accommodation pursuant to the ADA "regarding some of the lifting responsibilities." She has cited no legal authority to support her theory that Costco was obligated to eliminate a lifting requirement which is an essential function of a job in order to provide a reasonable accommodation. Instead, as noted above, the law is to the contrary.

Significantly, as noted, the lifting restrictions imposed by her health care providers would not have allowed her to perform the essential functions of the Payroll Clerk position, the very role from which she claims she was wrongfully demoted, for much of the time she was on leave. In addition, the restrictions would not have permitted her to fulfill the essential functions of the other positions she argues should have been assigned to her.

By way of summary, Plaintiff cannot point to a single posted position in which her restrictions could have been accommodated *and* which would not have been a promotion. It is undisputed that Marquez could not perform the essential functions of her own role, and she cannot point to any open positions into which she could have been transferred and in which her restrictions could have been accommodated (aside from, arguably, the Sales Auditor). However, even assuming Marquez could have performed the essential

functions of the Sales Auditor role, Costco would have had no legal duty to transfer her to that position, as a promotion is not a reasonable accommodation under the ADA.

The ADA does not require an employer to *create* a position for an employee when there is not an opening. Therefore, Plaintiff cannot show that Costco failed to provide a reasonable accommodation for her various temporary restrictions by offering her leave rather than transferring her to another position.

<u>Costco's Approach Was Reasonable</u>

Costco provided an extended leave of absence as a reasonable accommodation for Plaintiff's various temporary restrictions. Costco allowed Marquez to remain on a job-protected leave for approximately seven months, return briefly, and take another job-protected leave of absence a few weeks later. This extended leave of absence far exceeds what an employer would be required to provide as a reasonable accommodation under the ADA. *See Wood v. Green*, 323 F.3d 1309, 1314 (with respect to leave of absence, "[t]he ADA covers people who can perform the essential functions of their jobs presently or in the immediate future."); *Smith v. Sturgill,* 516 F. App'x 775, 776 (an employer is **not required to allow an employee to take an indefinite leave of absence)**; *Duckett v. Dunlop Tire Co.*, 120 F.3d 1222, 1226 (11th Cir. 1997) (per curiam) (holding that plaintiff's request for an additional two months of leave after he had already been on leave for an extended

period of time was not reasonable where he could not show that granting the leave would likely enable him to return to work).

Moreover, employers are not required to provide employees the maximum accommodation or every conceivable accommodation possible, nor are they required to provide the employee's accommodation of choice; employers must provide only a **reasonable** accommodation. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285-86 (11th Cir. 1997).

By providing an extended leave of absence, Costco exceeded its obligation to provide Marquez a reasonable accommodation at all relevant times.

To be sure, Costco *could have* promoted Plaintiff to another position, but the mere fact that it did not take this step after she committed a terminable violation hardly means that it violated the ADA.

Likewise, Costco could have proposed a lesser weight-lifting requirement as an accommodation; however, it is not required to do so if a lesser weight-lifting requirement changes the essential function of the job. *W.W. Grainger, Inc.*, 257 F.3d at 1260. Job restructuring is required only where it is reasonable. *Id.* at 1259; *see also Knight v. Computer Sciences Raytheon (CSR)*, 6:00-CV-1563ORL28DAB, 2002 WL 32818520, at *12 (M.D. Fla. Oct. 25, 2002) (finding that it would not be reasonable to require an employer to assign the plaintiff a lighter-lifting role for an indefinite period of time).

As outlined above, Marquez's claim is contrary to the rule that an employer is not required to modify a job position's essential functions. *Toland v. AT&T*, 2011 WL 12177025, at *19 (N.D. Ga. Apr. 20, 2011). Further, employers are not required to change an employee's "existing medium or heavy-duty position" into solely light-duty work because of a physical restriction of the plaintiff. *Hamilton v. Schneider Nat'l Carriers, Inc.*, No. 1:17-CV-3264-MHC-JSA, No. 1:17-CV-3264-MHC-JSA, 2019 WL 11553744, at *21 (N.D. Ga. Jan. 24, 2019), *report and recommendation adopted*, No. 1:17-CV-3264-MHC, 2019 WL 11553748 (N.D. Ga. Mar. 7, 2019)

### III.     Conclusion

For the reasons outlined above, the Court grants Costco's summary judgment motion.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on July 21, 2021.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>Copies furnished to</u>:
All Counsel of Record

52